IN THE UNITED STATES DISTRICT COURT

THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FLOWSERVE US INC., and FLOWSERVE FCD CORPORATION,<br><br>　　　　　　　Plaintiffs,<br>v.<br><br>OPTIMUX CONTROLS, LLC; TRIMTECK, LLC; JAIME CONESA,<br>　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:13-cv-1073<br><br>Judge Clark Waddoups |

## INTRODUCTION

Before the court are motions of Defendants TrimTeck, LLC, and Optimux Controls, LLC, for attorney fees and costs. (Dkt. No. 138 & 148.) On December 7, 2015, the court granted Plaintiff Flowserve's request for additional discovery pertaining to the theory of alter ego. (Dkt. No. 108.) The court required, however, that Flowserve bear the reasonable expense of any such discovery. The instant motions ask the court to award fees and costs totaling $47,322.09 to be paid to TrimTeck and $23,947.50 to be paid to Optimux Controls. On January 12, 2017, the court heard oral argument on those motions. (Dkt. No. 197.) After careful consideration of the parties' arguments, the court now GRANTS Defendants' motions.

## BACKGROUND

Having granted Flowserve additional discovery on the alter ego issue in December 2015, the court issued an Order and Protective Order ("the Protective Order") defining the scope of the alter ego discovery on March 14, 2016. (Dkt. No. 120.) The Protective Order required Defendants to produce the following documents, dating from 2004 to the present: (1) all bank statements, in unredacted form; (2) all income statements; (3) all balance sheets; and (4) all

communications with the accounting firm of Chick & Karo. It also required Defendants to allow Flowserve and its computer expert to copy all information from the Sage accounting system, dating from 2004 to the present, including existing backup data and information. But it permitted Defendants, their counsel, and their computer experts to be present for the copying of the Sage system. The protection order also required Optimux to produce all documents in its possession, custody, or control regarding the original purchase price of all tools, equipment, furniture, and office supplies transferred from Optimux to TrimTeck between 2004 and the present. All documents were to be designated CONFIDENTIAL—ATTORNEYS' EYES ONLY. Defendants produced the pertinent documents and granted Flowserve access to the Sage accounting system in May 2016. (Dkt. Nos. 138 & 148.)

    In light of the court's discovery and protection orders, TrimTeck delivered documents to Flowserve on May 11, 2016. (Dkt. No. 138, p. 2.) Then on May 16, 2016, TrimTeck and Optimux provided Flowserve access to the Sage accounting system in Coral Springs, Florida. TrimTeck's counsel traveled from Utah to Florida to oversee this process along with an expert for TrimTeck, as contemplated in the Protective Order. TrimTeck argues this oversight was necessary because the Sage system houses confidential accounting and proprietary data. TrimTeck's motion and supporting documents represent that its employees spent 84.75 hours locating, obtaining, and reviewing files in order to identify all responsive documents; its attorneys spent 169.5 hours reviewing documents and overseeing the copying of the Sage system; and a paralegal spent 28.4 hours reviewing and sorting documents. (Dkt. Nos. 139 & 140.)  The paralegal conducted the initial review of the documents as a cost mitigation measure. Additionally, at least one of TrimTeck's lawyers worked at a rate discounted from his typical billing rate. (Dkt. No. 140.) TrimTeck requests $4,720.83 for TrimTeck's employees' time;

2

$36,375.40 in attorney fees and $2,685.86 in attorney expenses, including travel to and from Florida; and $3,550.00 for the paralegal's time.

TrimTeck supports its request with the Declaration of Christian Conesa regarding the efforts of TrimTeck employees, the Declaration of Glenn R. Bronson regarding the hourly rates and time spent by attorneys at Prince, Yeates & Geldzahler on behalf of TrimTeck, and billing statements showing the work of each attorney, paralegal, and TrimTeck employee involved. The billing statements detail the tasks performed, the time spent, and the hourly rate charged for each billed task. (Dkt. Nos. 139 & 140.) Finally, TrimTeck's counsel represented to the court at oral argument that none of the tasks included in the billing statements would have been performed but for the discovery obligation and that he thoroughly reviewed the billing statements before filing the motion in ensure the only expenses requested were related to discovery production.

Optimux also produced documents to Flowserve in May 2016. (Dkt. No. 148, p. 3.) It represents that its personnel and counsel reviewed fourteen boxes of documents as well as the SAGE accounting system's electronic data in preparation for the document production. (Dkt. No. 148, p. 2.) And like TrimTeck, Optimux's attorney was present while Flowserve accessed the Sage accounting system. Optimux asserts that its employees spent 39.08 hours, its attorney spent 47.6 hours, and a paralegal spent an additional 20.3 hours—totaling 106.98 hours—identifying and reviewing documents for production. (Dkt. No. 148, pp. 3–4.) Thus, Optimux requests $21,339.50 in attorney and paralegal time and $2,608.00 for Optimux employees' time.

Optimux supports these sums by Declaration of Jaime Conesa regarding Optimux employee time, Declaration of Jeffrey A. Sarrow regarding attorney fees, and supporting billing statements that include a description, hour amount, and rate for each billed task. (Dkt. Nos. 148 & 149.) During oral argument on its motion, Optimux's counsel represented to the court that

he only billed for phone calls with other counsel in three instances, which calls were with TrimTeck's counsel, and reviewed billing records removing any redundancies.

Flowserve's total liability for fees and costs, according to the two Defendants' requests, is $71,269.59. Flowserve objects to this sum, and instead argues the total award should not exceed $4,402 for the 2,212 documents that were actually produced and for the forty-minutes it took to copy the Sage accounting system.[1]

## ANALYSIS

Rule 26(c) of the Federal Rules of Civil Procedure permits the court to "specify[] terms, including . . . the allocation of expenses for disclosure or discovery" when good cause suggests a certain party needs protection "from annoyance, embarrassment, oppression, or undue burden or expense" resulting from the discovery process. Fed. R. Civ. Pro. 26(c)(1)(B). Pursuant to this rule, the court ordered Flowserve to pay "reasonable costs incurred by Defendants for their attorneys to respond to the discovery request." (Dkt. No. 160.) Therefore, in assessing the amount Flowserve owes, the court must determine whether the expenses Defendants incurred were in fact reasonable. *Cf. United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000) (discussing the Lanham Act, which gives "the trial court discretion to award reasonable attorney fees to the prevailing party in 'exceptional' cases"). "When determining what is a reasonable award of attorney fees, the district court must calculate the 'lodestar,' which is the reasonable number of hours spent on the litigation multiplied by a reasonable hourly rate." *Id.*

---

[1] Flowserve reached this sum by first multiplying 35.08 hours for employee time by $25. (Dkt. No. 160, p. 15.) Flowserve asserted the rate should be capped at $25/hour because it is to compensate work Flowserve claims "could have been done by any basic clerical employee." Flowserve then added that sum to $3,425 for attorney time. It reached the attorney figure by multiplying Optimux's billing rate of $395/hour by five hours and TrimTeck's $290/hour rate by five hours. Flowserve does not clearly explain why five hours would have been a reasonable amount of time for Defendants' counsel to spend on alter ego discovery.

It is the burden of the party requesting a fee award to demonstrate that the hours spent and rate charged were reasonable, and by extension the reasonableness of the amount requested. *Id.* at 1234–35; *Parker v. CitiMortgage, Inc.*, 987 F.Supp.2d 1224, 1229 (D. Utah 2013). The party requesting fees should present the court with "meticulous, contemporaneous time records" that show the hours for which compensation is requested, which tasks were performed during that time, and who performed the work.[2] *United Phosphorus, Ltd.*, 205 F.3d at 1234. The billing records should not reflect "block-billing," or "[t]he use of billing practices that camouflage the work a lawyer does." *Robinson v. City of Edmond*, 160 P.3d 1275, 1284–85 (10th Cir. 1998). Billing statements that itemize the tasks performed with specific summaries of the tasks have been deemed adequate by the Tenth Circuit Court of Appeals. *See id.* at 1285. The party requesting fees must also present the court with evidence that the rate charged is consistent with the prevailing market rate for similar work conducted by similarly experienced lawyers. *Id.* at 1234.

Flowserve argues Defendants cannot meet their burden. It asserts the amount of fees requested should not be awarded for three reasons: (1) the Protective Order defined a narrow set of documents that should have been easily produced, requiring only the hours necessary to locate and deliver documents and the forty-two minutes to copy the Sage accounting system; (2) time spent reviewing documents and conferencing about them was for substantive review of the documents in preparation for Defendants' own cases, not for the purpose of discovery; and (3) even if all the billed activities were allowable, the billing records include misleading block

---

[2] The award of fees and costs may also encompass work performed by someone other than a member of the bar. *See, e.g.*, *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989) (extending a fee award under section 1988 of the Civil Rights Act to include time incurred by "secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client"). Flowserve does not object to the propriety of awarding Defendants the value of the time worked by such individuals. Rather, it merely objects to the rate at which these individuals' time was billed. (Dkt. No. 160.)

5

billing. (Dkt. No. 160, p. v.) These arguments are unavailing as both Defendants have demonstrated that the work for which they are requesting compensation was reasonable and necessary to comply with this court's order and that the rates charged for such work were reasonable.

### I. THE TIME BILLED IS REASONABLE.

Both Defendants have provided detailed billing records for each category of fees requested that show the work was limited to alter ego discovery as defined in the Protective Order. In support of its request for compensation of the time it billed for TrimTeck employees, TrimTeck submitted the Declaration of Christian Conesa and a detailed spreadsheet, which names the individual whose time is being billed, the date, the amount of time being billed, and a brief statement of the work completed during that time. (Dkt. No. 139.) Christian Conesa is the vice president of TrimTeck. And his sworn statement demonstrates that the time submitted for TrimTeck employees was spent "prepar[ing] and produc[ing] TrimTeck's responses to discovery requests." Mr. Conesa details that the employees worked to "locat[e], obtain[], and review[] TrimTeck files in order to find all responsive documents." Their time was also devoted to facilitating production of the data on the Sage accounting system.

Regarding attorney and paralegal fees, TrimTeck presents the Declaration of Glenn R. Bronson and billing statements from its counsel's law firm, Prince, Yeates & Geldzahler. (Dkt. No. 140.) Mr. Bronson represents himself as a shareholder of the firm and a member in good standing of the Utah State Bar and as having reviewed the time records presented. The billing statements, which were kept in the ordinary course of business, identify the person who conducted the work, the time spent, and the nature of the task, including that the time charged was spent on tasks related to production of materials contemplated in the Protective Order. Mr.

6

Bronson also represents the expenses for traveling to Florida were necessary to comply with the court's order.

Optimux also presents evidence supporting its fee request through sworn statement and billing records. To support its request for compensation of Optimux employees' time, Optimux submitted the Declaration of Jaime Conesa and a detailed spreadsheet that names the employee who did the work, the date, the amount of time spent, and a brief description of the task being billed. In his sworn statement, Mr. Conesa represents that he is the manager of Optimux and that its employees spent time "locating, obtaining and reviewing Optimux files in order to find all responsive documents" and then in discussions with counsel regarding production. (Dkt. No. 146.) Employees were also involved in preparing and producing data from the Sage accounting system. The accompanying spreadsheet supports Mr. Conesa's assertions as all entries are either for document location and delivery or consultation with counsel.

The Declaration of Jeffrey A. Sarrow supports Optimux's request for attorney fees. (Dkt. No. 149.) He represents that he is a member of the Florida Bar Association, has practiced law for 44 years, primarily working in commercial litigation, and reviewed the billing records. He asserts that his time and a paralegal's time were kept in the ordinary course of business. The accompanying billing statement include itemized and detailed statements of the tasks performed that show the hours billed were for the purposes of discovery.

None of the billing records include improper block-billing intended to mislead the court. They provide an itemized and detailed record, demonstrating to the court what tasks were actually completed and that those tasks were reasonable in light of the discovery order. Additionally, Defendants have demonstrated that they took efforts to limit the fees incurred by utilizing TrimTeck and Optimux employees and paraprofessional staff to gather documents and

conduct initial review and that counsel worked at a discounted rate. Thus, the records facially demonstrate that the expenses incurred by both Defendants were reasonable and for the collection, review, and production of the documents contemplated in the Protective Order. And Flowserve has not specifically identified the fees it believes are unreasonable and beyond the scope of the award.

Instead Flowserve speculates that Defendants' attorneys spent substantial time teleconferencing and conducting substantive review in order to develop Defendants' own cases. To prove this, Flowserve points only to samples of Defendants' billing statements that it claims "illustrate" the "wholly unnecessary document review" and telephone conferences. (Dkt. No. 160, pp. 8–11.) But Defendants' lawyers were entitled to, and responsible for, ensuring only responsive and nonprivileged documents were produced.[3] Likewise, Defendants were entitled to protect their proprietary and confidential information in the Sage system. Without some specific counterevidence that the purpose of the time entries for conferences, review, and oversight was beyond the scope of proper production described in the Protective Order or for the development of the Defendants' own cases, the court will accept the sworn statements and billing records as the true account of the work conducted. And those documents demonstrate a reasonable amount of time.

## II.     THE RATES CHARGED ARE REASONABLE.

Each of the Defendants has put on sufficient evidence that the rates charged were reasonable. The Declaration of Christian Conesa explains that the hourly rates for TrimTeck employees are based on the annual salary of each individual who performed the task divided by

---

[3] Flowserve cites its own statements during the hearing in which the court granted discovery as evidence that all that was contemplated by the discovery order was for Defendants to make their boxes of documents available for Flowserve to sort and review. (Dkt. No. 160, pp. 2–4.) Flowserve also suggests that the Protective Order should have alleviated any concerns about Flowserve seeing confidential information. (Dkt. No. 160, pp. 4.)

8

2080 hours per year. And Mr. Bronson's sworn statement states that the rates charged for work done on behalf of TrimTeck (between $240 and $295 for attorneys and $140 for a legal assistant) are consistent with those "customarily charged by reputable attorneys for similar services in the metropolitan Wasatch Front area" and that one of the attorneys working on this case regularly worked at a discount of $55/hour. For Optimux, Jaime Conesa's declaration asserts that the rates for the two Optimux employees were "based on reasonable annual compensation by 2,080 hours per year" and that the rate for a third individual who worked on a contract basis was $25/hour. Finally, Mr. Sarrow represented that his rate of $395.00/hour and the paralegal's rate of $125/hour are reasonable based on his familiarity with the rates customarily charged by similarly experienced lawyers. Flowserve has not objected to the rates of the attorneys and their staff members and the sworn statements of counsel demonstrate the reasonableness of those rates.

Flowserve does object, however, to the company employees' rates. It argues any work performed by those individuals should have been capped at $25/hour because it could have been performed by a clerical worker. While the rates may be higher than the rate a minimally competent person might charge, the rates the Defendants actually used are based on the employees' annual salaries. It is highly unlikely these two companies would inflate the salaries of permanent employees simply so that they could charge more for discovery in this litigation. And where the work was not conducted by permanent employees, it was conducted by a contract employee who earned the same $25/hour rate Flowserve proposes. It is not unreasonable for Defendants to have utilized its existing employees. And Flowserve has not shown that lower paid employees existed or would have been knowledgeable enough to locate and review the documents as accurately or efficiently as those higher billing individuals who did the work. Thus, the employees' rates are reasonable.

## CONCLUSION

Therefore, because the hours work and rates charged were reasonable, the requested amount of $71,269.59 is the lodestar value. And because Flowserve has not presented any specific arguments for downward departure from that sum, Defendants' motions are GRANTED. (Dkt. Nos. 138 & 148.)

The court hereby ORDERS Plaintiffs Flowserve US, Inc, and Flowserve FCD Corporation to pay forth with the sum of $47,322.09 to defendant TrimTeck, LLC, and the sum of $23,947.50 to defendant Optimux Controls, LLC, the sums to bear interest at the allowable federal rate for judgments from the date of this order.

DATED this 30th day of March, 2017.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge